UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBY PAVLICH, | NO. CV 13-01829-MAN |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security, | AND ORDER |
| Defendant. | |

Plaintiff filed a Complaint on March 14, 2013, seeking review of the denial of her application for a period of disability and disability insurance benefits ("DIB") after remand by the Appeals Council of a prior partially favorable decision granting a closed period of disability extending from April 20, 2006, through May 1, 2008. (ECF No. 1.) On April 17, 2013, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (ECF No. 8.) On November 25, 2013, the parties filed a Joint Stipulation ("Joint Stip.") in which plaintiff seeks an order reversing the Commissioner's decision and awarding benefits; and

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin, the current Commissioner of Social Security, is hereby substituted as the Defendant herein.

the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings. (ECF No. 12.) The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for a period of disability and DIB on November 17, 2008. (Administrative Record ("A.R.") 140.) Plaintiff, who was born on August 3, 1958 (*id.* 296),[2] claims to have been disabled beginning May 26, 2006 (*id.* 140) due to herniated cervical discs and depression (*id.* 299). Her claim was denied initially on February 4, 2009, and upon reconsideration on April 10, 2009. (*Id.*)

After the Commissioner denied plaintiff's claim initially and upon reconsideration, plaintiff requested a hearing. (A.R. 140; Joint Stip. at 2.) On March 16, 2010, plaintiff, represented by prior counsel, appeared at a hearing before Administrative Law Judge Joel B. Martinez (the "ALJ"). (A.R. 140, 151; Joint Stip. at 2.) Vocational expert ("VE") Elizabeth Ramos also appeared at the hearing. (A.R. 140.) On May 21, 2010, the ALJ issued a partially favorable decision, granting a closed period of disability extending from April 20, 2006, through May 1, 2008. (*Id.* 150.) The ALJ determined that plaintiff had the following severe impairments: "mild central and bilateral foraminal stenosis of L3-4 and L4-5 and a 3 mm disc protrusion at L5-S1, a 4 mm disc protrusion contacting and displacing the cervical cord posteriorly at C5-6, weakness in hand grip, status post cervical spine surgery, and obesity." (*Id.* 144 (citing A.R. 634, 548-49, 60-1, 558, 815-20 respectively).) He also found that after May 1, 2008, plaintiff had the residual functional capacity ("RFC") to perform light work, except that she: can perform postural activities occasionally; cannot be exposed to concentrated dust, fumes, or gases; cannot work around unprotected

---

[2] In his first decision, the Administrative Law Judge, declining to apply the "age categories mechanically," found plaintiff to be "an individual closely approaching advanced age as of May 2, 2008." (A.R. 149.)

heights and hazards; and cannot climb ladders, ropes, or scaffolds. (*Id.* 146.)

On June 3, 2010, plaintiff requested that the ALJ's decision be reviewed by the Appeals Council, asserting that the ALJ's actions, findings, or conclusions were not supported by substantial evidence. (A.R. 233.) Plaintiff also requested "an additional 30 days . . . for additional comments or evidence if warranted" and that benefits be paid while the appeal was pending. (*Id.*) In a subsequent letter to the Appeals Council dated August 16, 2010, plaintiff's counsel provided a statement of issues and contentions in support of the request for review. (*Id.* 456.) The letter specifically requested review by the Appeals Council "for the period May 2, 2008 [the day following the closed period of disability found by the ALJ] and continuing." (*Id.*) Plaintiff's counsel explained that the ALJ had not given appropriate weight to the opinions of plaintiff's treating physicians, Drs. Bardenheier and Shafer, who both "provided residual functional capacity assessments which support a finding of continued disability." (*Id.* 456-58.) In addition, plaintiff's counsel challenged the sufficiency of the ALJ's reasons for finding plaintiff less than credible. (*Id.* at 457.)

On May 27, 2011, the Appeals Council granted plaintiff's request for review. (A.R. 168-70.) The Appeals Council vacated the ALJ's 2010 decision and remanded the case for resolution of two issues. The first issue related to whether plaintiff's earnings during the closed period consisted of "earned wages." (*Id.* 168; *see also id.* 320-22 (results of Detailed Earnings Query).) The second issue to be resolved by the ALJ on remand was set forth by the Appeals Council as follows:

> The Administrative Law Judge found that medical improvement occurred as of May 2, 2008 because the claimant's conditions generally improved and stabilized. However, the Administrative Law Judge did not identify specific evidence showing a decrease in medical severity via signs, symptoms, and laboratory findings. 20 C.F.R. 404.159(b)(1) provides that a determination that there has been a

3

>     decrease in medical severity must be based on changes
>     (improvement) in the symptoms, signs, and/or laboratory findings
>     associated with the claimant's impairments.
>
>     A review of the evidence of record reflects that the only evidence
>     cited in May 2008 is a progress note documenting that the claimant's
>     depression was controlled.  As the finding of disability was based on
>     the claimant's back impairments, this progress note does not establish
>     a decrease in the medical severity of such impairments.  Further
>     evaluation of the medical evidence of record as it relates to a finding
>     of medical improvement is required.

(A.R. 168-69 (record citations omitted).)

On May 1, 2012 , plaintiff, represented by counsel, appeared at a hearing before the same ALJ who had issued the 2010 decision. (A.R. 29.)  Medical expert Samuel Landau, M.D., and VE Laurence Gordon also appeared and testified. (*Id.* 29, 58, 75.)  On June 1, 2012, the ALJ, despite having previously found that plaintiff was disabled for a closed period from April 20, 2006, through May 1, 2008 (*id.* 150), denied plaintiff's claim for DIB in its entirety (*id.* 41), and on January 30, 2013, the Appeals Council denied plaintiff's request for review of the ALJ's decision ("2013 Order") (*id.* 1-5).  The ALJ's 2012 decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

In his 2012 decision, the ALJ found that plaintiff meets the insured status requirements of the Social Security Act through September 2013, and has not engaged in substantial gainful activity since May 26, 2006, her alleged disability onset date. (A.R. 31.)  The ALJ determined that plaintiff has the severe impairments of stable 2 mm disc bulge at L4-5; 4 mm disc protrusion

4

contacting and displacing the cervical cord posteriorly at C5-6; degenerative joint disease of the left knee; status post-lumbar decompression and laminectomy at L5-S1; status post C5-6 anterior cervical decompression with fusion; and degenerative disc disease of the thoracic spine, but that she does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (*Id.* 32-33.) Additionally, the ALJ concluded that plaintiff's obesity is not a severe impairment. (*Id.* 32.)

The ALJ determined that plaintiff has the RFC to perform light work, except she can only occasionally climb stairs and ramps, stoop, kneel, crouch or crawl; can occasionally reach overhead; should avoid all concentrated exposure to dust, fumes, or gases; should avoid all balancing; and cannot climb ladders, ropes or scaffolds. (A.R. 33.) Relying on the testimony of the VE, the ALJ found that plaintiff was able to perform her past relevant work as a sales representative, as such work is generally performed. (*Id.* 39.) Alternatively, he found there are other jobs that she is also able to perform, including general merchandise sales and telephone solicitor jobs. (*Id.* 40-41.) Thus, in stark contrast to his 2010 decision, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, since May 26, 2006, the alleged onset date, through June 1, 2012, the date of the ALJ's decision. (A.R. 41.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will

suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630 (citing Connett, 340 F.3d at 874). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination . . . .'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges four sources of error. First, plaintiff claims that the ALJ exceeded the scope of the Appeals Council's remand order when he adjudicated the entire period of disability, concluded plaintiff was never under a disability, and revoked his earlier grant of a closed period of disability. (Joint Stip. at 2.) Second, she claims that the ALJ failed to give legally sufficient reasons for rejecting the opinions of four physicians, Drs. Chikovani, Shafer, Bardenheier, and Collins. (*Id.* at 3.) Third, she claims the ALJ failed to properly evaluate her obesity. (*Id.*) Fourth,

she claims the ALJ did not properly consider the third-party statement of her husband.  (*Id.*)

### I.  The ALJ Did Not Exceed The Scope Of The Appeals Council's Remand Order.

In his partially favorable 2010 decision, the ALJ granted plaintiff a closed period of disability extending from April 20, 2006, to May 1, 2008.  (A.R. 146 (citing *id.* 650), 456.)  The 2010 decision informed plaintiff that, if her case were reviewed by the Appeals Council, the Appeals Council would "consider all of [the ALJ's] decision," including the parts with which plaintiff agreed, and could "make any part of [the ALJ's] decision more or less favorable or unfavorable" to her.  (*Id.* 137.)  Nevertheless, plaintiff asked the Appeals Council to review the ALJ's decision, particularly the ALJ's finding that plaintiff had medically improved after May 1, 2008.  (*Id.* 456-58.)

The Appeals Council granted plaintiff's request for review, vacated the 2010 decision, and remanded the matter for "resolution of the following issues:"  (1) whether the plaintiff's income between 2006 and 2008 was the result of disqualifying substantial gainful activity; and (2) whether the medical evidence of record supported the finding of medical improvement.  (A.R. 168-69.)  To that end, the Appeals Council stated "upon remand the Administrative Law Judge will:"

>   (1) obtain additional evidence regarding the income received by the claimant in 2006 through 2008 to determine whether such income represents substantial gainful activity;
>   (2) "if necessary" obtain evidence from a medical expert to clarify the date of onset and date of medical improvement;
>   (3) obtain additional evidence concerning the claimant's musculoskeletal disorders;
>   (4) give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record; and

    (5) "if warranted by the expanded record," obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base.

(A.R. 169.)

In conformity with these instructions, the ALJ: determined that plaintiff's income in 2006 through 2008 was not the result of disqualifying substantial gainful activity (A.R. 32); obtained additional evidence concerning plaintiff's musculoskeletal disorders (*id.* 36 (discussing 2012 orthopedic consultative examination)); and gave further consideration to claimant's maximum RFC. (*Compare id.* 33-39 (ALJ's post-remand discussion of plaintiff's RFC) *with id.* 146-149 (ALJ's pre-remand discussion of plaintiff's RFC).) On the basis of this augmented record, the ALJ determined that plaintiff was not disabled, effectively reversing his prior, partially-favorable decision. (*Id.* 41.)

Plaintiff now contends that the ALJ's 2012 decision was not consistent with the Appeals Council's remand order, because rather than limiting his adjudication to consideration of the onset date and the date of medical improvement, he readjudicated the entire period.[3] (Joint Stip. at 4 (citing 20 C.F.R. § 404.977(b) for the proposition that the ALJ must adjudicate in a manner consistent with the Appeals Council order).) The Commissioner counters that the ALJ did not exceed his authority, because the Appeals Council expressly asked him to re-examine the medical evidence. (Joint Stip. at 5.) The Commissioner further contends that: one, plaintiff had notice her appeal of the ALJ's 2010 decision could result in a reversal of the favorable portion of that decision; and the Appeals Council affirmed the ALJ's decision, which suggests that it found no

---

[3] Plaintiff also contends that the ALJ's 2012 decision places her in the position of having to repay thousands of dollars worth of benefits that she already received. (Joint Stip. at 5-6.) However, there is no evidence before the Court that the Commissioner has asked plaintiff to repay this money, and there has been no briefing on the legal issues that such a request might raise. Additionally, plaintiff expressly requested that benefits be paid while her request for review by the Appeals Council was pending. (*See* A.R. 233.)

error in the ALJ's approach. (*Id.*))

Plaintiff is correct that an Administrative Law Judge has limited powers on remand. Under 20 C.F.R. § 416.1477(b) and 20 C.F.R. § 404.977(b), an "administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." Thus, an ALJ who either fails to take an action ordered by the Appeals Council or takes an action that is "inconsistent with" the Appeals Council's remand order commits legal error. *See* Orn, 495 F.3d at 635-36; *see also* Hutchison v. Apfel, No. 2:98-CV-087, 2001 WL 336986, *11 (N.D. Tex. Mar. 9, 2001) (finding that ALJ erred as a matter of law where he failed to follow the Appeals Council's order of remand). Here, however, plaintiff fails to show that the ALJ's actions fell into either category.

Although the case law defining the regulations' prohibition of ALJ actions that are "inconsistent with the . . . remand order" is sparse, it indicates that this category of prohibited actions is narrow and does not include actions that were neither expressly forbidden nor expressly contemplated by the Appeals Council's remand order. *See e.g.*, Houston v. Sullivan, 895 F.2d 1012, 1015 (5th Cir. 1989) ("Once the case was remanded to the ALJ to gather more information about the extent of [claimant's] disability, the ALJ was free to reevaluate the facts."); Hernandez-Deveraux v. Astrue, 614 F. Supp.2d 1125, 1134-35 (D. Or. 2009) (where Appeals Council ordered the ALJ to provide further analysis of one doctor's opinion and "as appropriate" recontact medical sources for clarification about the plaintiff's abilities, the ALJ did not exceed the scope of his authority by refusing to permit that one doctor to testify telephonically at the hearing); Romero v. Apfel, No. 99-2141, 2000 WL 985853, *2 n.1 (10th Cir. Jul. 18, 2000) ("The Appeals Council's remand for consideration of step three disability after surgery did not constrain [the] ALJ's . . . consideration of pre-surgery disability at step five -- especially given the new evidence relevant to the issue."). In a 1987 decision, Campbell v. Bowen, 822 F.2d 1518 (10th Cir. 1987), the Tenth Circuit articulated the rationale for this approach, stating that an Appeals Council remand order does not "bind the ALJ to his earlier decision. To hold otherwise would discourage administrative

law judges from reviewing the record on remand, checking initial findings of fact, and making corrections, if appropriate." Campbell, 822 F.2d at 1522.

Relying on this case law, the Court finds that the ALJ in this case did not exceed his remand authority by readjudicating the entire period of disability. First, rather than prohibiting the ALJ from revisiting the portion of his decision that was favorable to plaintiff, the Appeals Council vacated the ALJ's decision in its entirety. (A.R. 168.) Second, as explained above, only some of the Appeals Council's instructions were mandatory, and the ALJ did not contravene, or fail to take, any one of the mandated actions. Accordingly, the ALJ's decision to revisit his initial disability determination was neither expressly forbidden nor expressly contemplated by the remand order, and as a result, it does not constitute legal error per se. Nevertheless, as explained below, the ALJ committed legal error in determining that plaintiff did not suffer a disabling injury in 2006, and the case is therefore remanded for further consideration consistent with this Memorandum Opinion and Order.

## II. The ALJ Erred By Rejecting The Opinions Of Two Of Plaintiff's Treating Physicians.

Plaintiff contends that the ALJ improperly rejected the opinions of the following four physicians: Dr. Oleg K. Chikovani, the neurosurgeon who operated on plaintiff in 2007; Dr. James S. Shafer, the orthopedic surgeon who operated on plaintiff in 2003, and continued to treat plaintiff through 2010; Dr. J Kerry Collins, a doctor who reviewed plaintiff's medical records in connection with her application for long term disability; and Dr. Jean Bardenheier, plaintiff's primary care physician.[4] (Joint Stip. at 7.)

---

[4] Because the Court remands on the grounds that the ALJ erred in discounting Dr. Chikovani's opinions and the pre-2009 opinions of Dr. Shafer, it declines to consider whether the ALJ was warranted in discounting the opinions of Dr. Bardenheier and Dr. Collins.

10

In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001). The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to know and observe the claimant. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). Accordingly, when a treating or examining physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). When it is contradicted by another doctor, a treating or examining physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id.*; *see also* Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Orn, 495 F.3d at 632.

Here, the ALJ suggests that the findings of Dr. Chikovani, Dr. Shafer, Dr. Bardenheier, and Dr. Collins were contradicted by the findings of Dr. Payam Moazzaz, an orthopedic surgeon who examined plaintiff in January 2009, Dr. E. L. Gilpeer, the consulting physician who reviewed her medical records in January 2009, Dr. Mark Elzik, a board-eligible orthopedic surgeon who examined plaintiff in February 2012, and Dr. Mark Landau, the board certified internist who reviewed the records and testified as a medical expert at the 2012 hearing. (*See* A.R. 36-39.) However, none of these physicians assessed plaintiff's functional capacity in the year before or after plaintiff's 2007 surgery. (*See generally* A.R. 815-20 (01/11/09 report of Dr. Moazzaz), 821-26 (01/29/2009 report of Dr. Gilpeer), 1017-22 (02/09/12 report of Dr. Elzik), 58-75 (05/01/12 testimony of Dr. Landau).) Accordingly, to the extent that plaintiff's treating physicians -- namely, Dr. Chikovani, Dr. Shafer, and Dr. Bardenheier -- expressed opinions about plaintiff's abilities and limitations in 2006, 2007, and 2008, those opinions are uncontradicted, and the ALJ was required to articulate "clear and convincing" reasons for discounting them.

### A.     Dr. Chikovani

Dr. Chikovani treated plaintiff for back pain between April 2007, and January 2008. On April 24, 2007, Dr. Chikovani dictated a report concerning plaintiff's workers' compensation claim for the back injury she sustained in April 2006. (A.R. 719.) At the time, plaintiff was complaining of episodes of numbness in her hands and upper extremities, pain in her posterior cervical area, pain in her left parascapular area, and suboccipital headaches. (*Id.*) Dr. Chikovani stated that a recent MRI of plaintiff's cervical spine revealed a large disc extrusion at the C5-6 level with "rather significant" cord compression. (*Id.*) Dr. Chikovani recommended surgery and estimated that plaintiff would be on Temporary Total Disability status for an estimated three months from the date of the surgery. (*Id.* 720-21.)

Plaintiff underwent the recommended cervical diskectomy and fusion on June 7, 2007. (*See* A.R. 717.) On June 20, 2007, Dr. Chikovani found that plaintiff was "doing well post-operatively with dramatic improvement in her condition," and the x-rays revealed "excellent alignment." (*Id.*) At the follow up appointment on July 17, 2007, plaintiff reported that "she is doing well but . . . has noted pain in her right shoulder" and "[a]t times she has numbness in her . . . fingers." (*Id.* 713.)

At plaintiff's next appointment, on August 14, 2007, Dr. Chikovani recorded that plaintiff "is doing well and essentially has no complaints." (A.R. 711.) However, Dr. Chikovani also extended plaintiff's period of Temporary Total Disability, moving the end date from September 7, 2007, to September 24, 2007. (*Id.*) On September 11, 2009, Dr. Chikovani noted that plaintiff complained of "occasional neck pain," but the x-rays showed that "the fusion is progressing." (*Id.*) On October 17, 2007, Dr. Chikovani reported that plaintiff was "neurologically fine" and "doing well in respect to her cervical spine," but was "complaining of episodes of low back pain." (*Id.* 708.) He extended plaintiff's period of Temporary Total Disability until November 26, 2007. (*Id.*)

On November 20, 2007, Dr. Chikovani reported that the x-rays showed that "[t]he fusion [was] not solid yet," and he extended plaintiff's period of Temporary Total Disability until January 21, 2008. (A.R. 705.) On January 8, 2008, Dr. Chikovani reported that plaintiff was complaining of "posterior cervical pain and numbness in both upper extremities" as well as "low back pain, which has been progressively getting worse." (*Id.* 704.) He observed that the x-rays showed that the fusion was "slowly progressing." (*Id.*) He recommended an MRI of plaintiff's lumbosacral spine to inform decisions about how to manage her low back pain. (*Id.*) He also extended plaintiff's period of Temporary Total Disability a fourth time, moving the end date to February 18, 2008. (*Id.*)

On January 16, 2008, Dr. Chikovani reviewed the MRI and found that plaintiff had "moderate spinal stenosis at L4-5 level[,] . . . a disc bulge at L3-4, L-5, and a herniation at L5-S1 level with posterior displacement of the left S1 nerve root." (A.R. 703; *see also id.* 634 (findings of 01/16/08 MRI).) He identified April 15, 2008 as plaintiff's "estimated return to work date." (*Id.* 702.)

The ALJ affords little weight to Dr. Chikovani's opinions that plaintiff was disabled and unable to work between June 7, 2007 and April 15, 2008 because Dr. Chikovani's findings were "inconsistent[,] . . . based solely on plaintiff's subjective complaints[,] . . . and unsupported by the objective medical evidence." (A.R. 38) The ALJ explains that Dr. Chikovani had changed plaintiff's estimated return to work date repeatedly, found that plaintiff was doing well postoperatively with "dramatic improvement in her condition," and identified "no new medical evidence" to support his subsequent findings that plaintiff could not perform light work. (*Id.*) However, the ALJ mischaracterizes Dr. Chikovani's opinions.

First, Dr. Chikovani's findings were not "inconsistent," they simply showed that plaintiff did not respond to treatment in the way Dr. Chikovani expected. Although plaintiff initially showed "dramatic improvement," Dr. Chikovani subsequently noted that plaintiff's fusion was progressing

13

"slowly" and, further, that plaintiff had developed a secondary issue in her lower back. Second, rather than basing his opinions solely on plaintiff's subjective complaints as the ALJ claims, Dr. Chikovani based his findings on x-rays and MRIs, which generally supported plaintiff's allegations of back pain. Finally, the ALJ's statement that Dr. Chikovani provided "no new medical evidence" to support a finding that plaintiff could not perform light work was refuted by Dr. Chikovani's reference on January 16, 2008, to an MRI showing that plaintiff had developed new problems in her back. Specifically, whereas plaintiff's 2007 surgery was intended to remedy a large disc extrusion at the C5-6 level in her upper back, Dr. Chikovani discovered in January 2008, that plaintiff was suffering from the following problems in her low back: "moderate spinal stenosis at L4-5 level[,] . . . a disc bulge at L3-4, L-5, and a herniation at L5-S1 level with posterior displacement of the left S1 nerve root." Accordingly, the ALJ erred in his assessment of the weight owed to Dr. Chikovani's opinions about plaintiff's ability to work in 2007 and 2008.

**B. Dr. Shafer**

The ALJ similarly accorded little weight to the opinions of Dr. James S. Shafer, the orthopedic surgeon who operated on plaintiff in 2003, and continued to treat plaintiff for back pain through 2010. (*See* A.R. 521-32, 950-86, 1001-06.) On February 9, 2007, four months before plaintiff's surgery with Dr. Chikovani, Dr. Shafer filled out an Attending Physician's Statement in which he opined that plaintiff's impairment was a "severe limitation of [her] functional capacity" that made her "incapable of minimal (sedentary) activity." (*Id.* 545.) He explained that she could not lift, bend, or stoop, and she could only engage in "limited" standing or walking.[5] (*Id.*) Later that month, Dr. Shafer submitted an initial treatment report to Aetna Insurance in which he opined that plaintiff was temporarily disabled and would remain unable to work for an "indefinite" number of weeks. (*Id.* 1002.)

---

[5] In his 2010 decision, the ALJ adopted Dr. Shafer's 2007 opinion. (A.R. 144.)

Three years later, in February 2010, Dr. Shafer filled out a Physical Capacities Evaluation. (A.R. 987.) In that Evaluation, Dr. Shafer stated that plaintiff could sit for only two hours total in a work day and could stand or walk for only two hours total in a work day. (*Id.* 987.) He stated that plaintiff could lift up to five pounds frequently and 20 pounds occasionally. (*Id.* 988.) He added that plaintiff suffers from disabling fatigue, for which there is a reasonable medical basis, and that this fatigue would prevent her from working full time, even in a sedentary position. (*Id.*) He stated that plaintiff's "pain and/or side effects of medication . . . consitute[d] a significant handicap with sustained attention and concentration" that would preclude her from engaging in skilled work tasks. (*Id.* 990.)

One month later, in March 2010, Dr. Shafer filled out a Residual Functional Capacity Questionnaire on which he again indicated that plaintiff experienced severe and constant pain that impaired her memory and concentration. (A.R. 1010-1011, 1012.) He stated that plaintiff's struggle with depression and anxiety contributed to the severity of her symptoms and limitations and that the side effects of plaintiff's medications made her experience dizziness, drowsiness, upset stomach, headaches, and unstable footing. (*Id.* 1012.) Dr. Shafer stated that plaintiff could walk only a quarter of a block before needing to rest, could sit without a break for only 10-15 minutes, and could stand without a break for the same amount of time. (*Id.* 1013.) Dr. Shafer estimated that plaintiff could not stand, sit, or walk for even two hours during an eight hour workday. (*Id.*) He added that plaintiff could not lift, even if the item being lifted was less than ten pounds, and noted that plaintiff has significant limitations in doing repetitive reaching, handling, or fingering. (*Id.* 1014-15.) However, Dr. Shafer also answered the question "Is your patient a malingerer?" in the affirmative. (*Id.* 1012.)

The ALJ discounted Dr. Shafer's 2007 opinions on the grounds that it was contradicted by the opinions of Drs. Moazzaz, Gilpeer, Elzik, and Landau, and despite opining that plaintiff was "indefinite[ly]" disabled, Dr. Shafer only recommended 12 weeks of treatment in his initial treatment plan. (A.R. 38.) As explained above, however, none of the consulting physicians

15

assessed plaintiff's functional capacity in the year before or after her surgery. Accordingly, Dr. Shafer's assessment of plaintiff's limitations prior to her June 2007 surgery is uncontradicted, and thus, the ALJ was required to articulate "clear and convincing" reasons for rejecting it. The ALJ did not meet this standard. Instead, the ALJ discounted Dr. Shafer's 2007 opinions solely on the ground that, in his initial treatment plan, Dr. Shafer opined that plaintiff was "indefinite[ly]" disabled but only recommended 12 weeks of treatment in his initial treatment plan. (A.R. 38.) Twelve weeks, however, was only Dr. Shafer's *estimate* of the duration of treatment. (*Id.* 1004 (identifying 12 weeks as the "estimated duration" of treatment).) Further, after 12 weeks, Dr. Shafer observed that plaintiff's symptoms were worse and noted that plaintiff had scheduled a "cervical diskectomy and fusion" with Dr. Chikovani. (*See id.* 955 (6/4/07 - Dr. Shafer reports that plaintiff's symptoms are worse and that she is scheduled for a cervical diskectomy and fusion and that he will follow up with her after the surgery); *see also id.* 717 (6/20/07 - Dr. Chikovani reports that plaintiff underwent surgery on 6/7/07).) The fact that Dr. Shafer's more conservative course of treatment proved ineffective and surgery was recommended is not a legitimate reason for discounting Dr. Shafer's assessment of plaintiff's functional capacity prior to her surgery. Accordingly, the ALJ failed to provide a clear and convincing reason for discounting Dr. Shafer's February 2007 opinion that plaintiff was totally disabled, and as a result, the ALJ erred in his assessment of the weight owed to Dr. Shafer's opinions about plaintiff's ability to work in 2007.

The ALJ did not err, however, in rejecting Dr. Shafer's assessments of plaintiff's limitations in 2010, nearly three years after plaintiff's surgery. Because Dr. Moazzaz, Dr. Gilpeer, and Dr. Landau made findings that contradicted Dr. Shafer's 2010 assessments of plaintiff's limitations, (*see* A.R. 36-38), the ALJ only needed to provide "specific and legitimate" reasons for discounting Dr. Shafer's assessments. To that end, the ALJ correctly noted that Dr. Shafer made internally inconsistent findings about plaintiff's abilities. (A.R. 39.) For example, in treatment notes dated November 6, 2009, Dr. Shafer indicated that plaintiff was able to perform "modified work" but at plaintiff's next appointment a few months later, Dr. Shafer described plaintiff's condition as the "same" but nevertheless indicated that she was totally disabled. (*Compare* A.R. 952 *with id.* 950.)

Similarly, in Dr. Shafer's February 2010 evaluation of plaintiff's physical capacities, he stated that plaintiff could sit, stand, or walk for two hours total in an eight hour workday; could lift up to five pounds frequently; and could lift up to 20 pounds occasionally. (*Id.* 987-88.) One month later, in his March 2010 Residual Functional Capacity Report, Dr. Shafer estimated that plaintiff could *not* stand, sit, or walk for two hours during an eight hour workday, could *never* lift an item weighing ten pounds or more, and could *not* lift an item weighing less than ten pounds. (*Id.* 1013-14.) The inconsistencies in both Dr. Shafer's treatment notes and his formal assessments of plaintiff's limitations are a legitimate reason for discounting his 2009 and 2010 opinions about plaintiff's physical abilities.

### III. Remand Is Required.

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179-81.

In this case, the ALJ initially found that plaintiff was disabled from April 20, 2006, through May 1, 2008, but, on remand, determined that plaintiff was never disabled. In doing so, the ALJ identified discrepancies between the findings of the physicians who assessed plaintiff's functional capacity *after* January 1, 2009, and the findings of the physicians who treated plaintiff *before* that date. The ALJ used those discrepancies as a basis for discounting the treating physicians' opinions about plaintiff's limitations, rather than considering the possibility that the discrepancies between

the doctors' assessments of plaintiff's pre-2009 and post-2009 abilities were the result of plaintiff's medical improvement. The Court finds that no physician contradicted the treating physicians' opinions about plaintiff's functional capacity in 2006, through 2009, and, therefore the ALJ was required to provide clear and convincing reasons for discounting the opinions of plaintiff's treating physicians about plaintiff's limitations during that time period. The ALJ did not do so, and the case must now be remanded to remedy this defect. Upon remand, the ALJ must reassess Dr. Chikovani's opinions and Dr. Shafer's pre-2009 opinions. Although the Court did not need to reach all of the issues raised in this case to determine that remand was appropriate, the ALJ may wish to ensure on remand that plaintiff's obesity is adequately addressed and that the third-party statement of plaintiff's husband has been considered and accepted or rejected in accordance with the applicable legal precedent.

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: September 10, 2014

_Margaret A. Nagle_
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE